IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SEAN JOSEPH LEVIN,

      Plaintiff,

v.                                                                                CV 11-0517 BB/WPL

NEW MEXICO CORRECTIONS
DEPARTMENT, et al.

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Sean Joseph Levin brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging that Deputy Warden Kenneth Sandlin violated his Eighth Amendment rights while he was incarcerated at Central New Mexico Correctional Facility ("CNMCF"). (Doc. 1; Doc. 36.) Sandlin filed a *Martinez* report arguing that he did not violate Levin's constitutional rights and that Levin failed to exhaust his administrative appeals. (Doc. 40.) The Court referred this case to me to make findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 3.) Having carefully reviewed the pleadings and the relevant law, I find that Levin has failed to exhaust his administrative remedies and recommend that the Court grant summary judgment for Defendant and dismiss Levin's claims without prejudice.

**FACTUAL & PROCEDURAL BACKGROUND**

While incarcerated at CNMCF, Levin developed a lump on the bottom of his right foot. (Doc. 1 at 5.) Levin filled out a medical sick call slip to receive treatment for his foot on November 8, 2012. (*Id.*) Levin claims that he was not seen for a month, and, once he received medical attention, the physician's assistant dismissed his ailing foot as "nothing." (*Id.*) Levin

gave Sandlin a written, informal complaint regarding this issue, and he was later scheduled to see a podiatrist. (*Id*.)

In late January 2011, Levin saw a podiatrist, and the podiatrist diagnosed Levin with a ganglion cyst or lipoma tumor on the bottom of his right foot. (*Id.* at 6.) He claims that the podiatrist recommended that he have an MRI of his foot and stated that Levin was a possible surgical candidate. (*Id.*) However, Levin never receive an MRI or additional care while at CNMCF, even though he claims to have repeatedly approached Sandlin about his foot. (*Id.*)

On May 19, 2011, Levin filed an informal complaint which raised a number of issues, including his delayed medical care and Sandlin's alleged "retaliatory" action against him on May 18, 2011. (Doc. 40-1 at 16-18.) The Reviewing Staff Member recommended that Levin file a Formal Grievance on May 23, 2011. (*Id.* at 15.) On May 26, 2011, Levin submitted a second informal grievance for the same retaliatory incident that had occurred on May 18; this informal grievance also included complaints regarding his medical care. (*Id.*; Doc. 40-1 at 12.) On May 30, 2011, Levin attached the May 26 Informal Complaint to an Inmate Grievance form and submitted it to the Grievance Officer. (*Id.* at 9-14.) The Grievance Officer accepted the complaint for consideration on June 3. (*Id.* at 9.) On June 7, the Grievance Officer reviewed the complaint and noted on the form that it impermissibly addressed several issues. (*Id.*) The Grievance Officer clarified that Levin should submit separate grievances for each issue. (*Id.* at 10.) The form was returned to Levin on June 14. (*Id.*)

Levin was transferred to Springer Correctional Facility on June 16. He had an MRI on August 29, 2011, which revealed that he had a plantar fibromatosis. (Doc. 36 at 1.)

Levin filed this lawsuit on June 13, 2011, raising three causes of action (Doc. 1), two of which the Court dismissed *sua sponte* for failure to state a claim (Doc. 25). The Court dismissed all of the named defendants except Sandlin and ordered Sandlin to answer Levin's surviving claim, which alleges that Sandlin failed to provide him with adequate medical care in violation of the Eighth Amendment. (*Id.* at 5; Doc. 1 at 5-7; Doc. 33 (Sandlin's Answer).) Shortly after Sandlin filed his answer, Levin filed a motion for trial and to remove Sandlin's counsel. (Doc. 35.)

Sandlin filed a *Martinez* report on May 23, 2012. (Doc. 40.) A day later, Levin moved for default judgment for failure to timely file a *Martinez* report and for summary judgment based on the merits of his Eighth Amendment claims. (Doc. 41.) On June 1, 2012, Levin filed a response to the *Martinez* report (Doc. 44), and Sandlin filed a reply (Doc. 46). Sandlin also responded in opposition to the motion for default or summary judgment. (Doc. 45.)[1]

## STANDARD OF REVIEW

The court should grant summary judgment only when the record demonstrates "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). A *Martinez* report is also treated as an affidavit and will be construed as a motion for summary judgment. *Id*. at 1109-13; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). A court cannot resolve material

---

[1] This Proposed Findings and Recommended Disposition was filed prior to the deadline for Levin to file a reply brief. As will be discussed below, since Levin cannot win on the merits of this motion (Doc. 41), a reply brief would be irrelevant to my analysis.

disputed factual issues by accepting a *Martinez* report's factual findings when they are in conflict with pleadings or affidavits. *Hall*, 935 F.2d at 1109. However, conclusory allegations without specific supporting facts have no probative value and cannot create a genuine issue of fact. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992).

Because Levin proceeds *pro se*, I construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall*, 935 F.2d at 1110). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[.]" *Garrett v. Selby, Connor, Maddox & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

## ANALYSIS

### I.   Defendant's *Martinez* Report (Doc. 40)

Before bringing a lawsuit regarding conditions of confinement, an inmate must exhaust all administrative remedies that are available within the facility. *See* 42 U.S.C. 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhausting administrative remedies means that the prisoner completes the grievance process, including pursuing all available administrative appeals, unless all available relief is obtained earlier in the process. *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "An inmate

who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the Prison Litigation Reform Act] for failure to exhaust his administrative remedies." *Jernigan*, 304 F.3d at 1032 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)). A remedy is "available" to the inmate if it is "capable of use for the accomplishment of a purpose." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (quoting *Booth v. Churner,* 532 U.S. 731, 737 (2001)).

The exhaustion requirement serves several purposes. First, it enables prison officials to resolve the complaint without the need for court intervention. *Ross*, 365 F.3d at 1184. Next, it filters out some frivolous claims. *Id.* Finally, it creates an administrative record that aids in the court's review of the case before it. *Id.* However, the benefits of exhaustion can only be realized "if the prison grievance system is given a fair opportunity to consider the grievance." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (quoting *Woodford v. Ngo,* 548 U.S. 81, 93 (2006)). For that reason, inmates must complete the entire review process in accordance with the rules that are defined by the prison grievance process itself. *Id.* (quoting *Jones v. Bock,* 549 U.S. 199, 218 (2007)).

Failure to exhaust administrative remedies is an affirmative defense and not a pleading requirement. *Jones,* 549 U.S. at 212. Consequently, Sandlin bears the burden of proving that Levin did not utilize the available administrative remedies. *See Tuckel*, 660 F.3d at 1254. Once Sandlin satisfies his burden, though, the onus falls to Levin to specifically show that either he exhausted his administrative remedies or administrative remedies were unavailable for each alleged violation. *See id.*

Here, Sandlin asserts failure to exhaust as a defense to Levin's claims. (Doc. 40 at 7.) CNMCF has a grievance policy in place. (Doc. 40-1 at 3-4; Doc. 40-2.) The policy allows an aggrieved inmate to seek formal review of complaints related to his or her confinement. (Doc. 40-2 at 1.) The policy clearly states that "[t]he inmate must submit a separate grievance form for each issue grieved." (*Id.* at 10.) Each inmate receives a written copy and oral summary of the policy during orientation. (*Id.* at 3.) In order to grieve an issue, an inmate must first file an informal complaint using the Informal Complaint Form within five calendar days of the incident. (*Id.* at 9.) If the informal effort fails to resolve the complaint within five working days, the inmate must then file an Inmate Grievance Form within twenty calendar days of the incident and attach the written informal complaint to the form. (*Id.*) The inmate must place the completed form in a designated Grievance Box or an institutional mail box, or the inmate may deliver the form to a designated Grievance Officer. (*Id.*) The Grievance Officer must notify the prisoner of receipt of the grievance on an Inmate 2-Day Notice of Receipt of Formal Grievance Form. (*Id.*)

The Grievance Officer notes the date of the grievance and assigns it a number. (*Id.* at 11.) The Grievance Officer reviews the grievance, fills out the Grievance Officer's report portion of the Inmate Grievance Form, and submits a report to the Warden within twenty working days of receipt. (*Id.*) The Warden reviews the report and informs the inmate, in writing, of the decision within fifteen days of receiving the Grievance Officer's report. (*Id.* at 12.) The inmate may appeal the Warden's decision to the Office of the Secretary of Corrections within seven calendar days of receiving the decision by completing the appeal portion of the Inmate Grievance Form and mailing it, placing it in the Grievance Box, or delivering it to the Grievance Officer. (*Id.*)

The decision of the Secretary is the final decision. (*Id*.) The Grievance Officer must keep records of all grievances filed by the inmates and their disposition. (*Id*. at 14.)

Levin filed an informal complaint and a formal complaint regarding his medical treatment. (Doc. 40-1 at 9-14.) The grievance was accepted for consideration on June 3, 2011 (*id*. at 9), it was reviewed on June 7, 2011, and the Officer wrote on the form that Levin needed to file separate grievances (*id*. at 10), and the Grievance Officer returned the form to Levin on June 14, 2011 (*id*.). The Appeal section of the form is completely blank, indicating that Levin did not pursue an appeal. (*Id*.) Attached to Sandlin's *Martinez* report is an affidavit from Ralph Casaus, Adult Prisons Divisions Corrections Administrator/Grievance Appeals Coordinator. (Doc. 40-1 at 3-4.) Casaus attests that Levin did not appeal any grievances regarding his medical care to the Secretary in 2010, 2011, or 2012. (Doc. 40-1 at 3.)[2] However, Levin states that he mailed a copy of his formal Grievance to Casaus, but Casaus dismissed it for failing to follow policy. (Doc. 35 at 6; Doc. 44 at 4.) Based on Levin's failure to appeal the decision, Sandlin argues that Levin has failed to exhaust his administrative remedies on the issues alleged in his complaint. (Doc. 40 at 10.)

Levin claims that he did exhaust his administrative remedies. (Doc. 44 at 4.) He states that Sandlin did not include all of the grievances that he filed "pertaining to this issue, and others, showing a pattern of systematic abuse and deprivation . . . ." (*Id.* at 3.) He then addresses

---

[2] Levin did file a grievance with the Secretary of the Corrections Department in 2010 regarding a kosher meal option. (Doc. 40-1 at 5-8.) He appears to have completed the formal grievance procedure, from filing a complaint to appealing to the Secretary, in a timely manner, thus indicating that he was capable of using the grievance procedure. (*Id*.)

the complaint filed in June 2011, and he insisted that he did follow policy by sending a copy of his grievance directly to the Secretary. (*Id*. at 4-5.)

While Levin insists to the contrary, it is clear that he did not follow the grievance process. He alleges that the *Martinez* report is deficient, and he claims that he filed informal complaints and grievances which are not included in the record. (Doc. 44 at 3.) This statement is conclusory; Levin offers no specifics about the individual events or dates of the allegedly omitted grievances. Notably, he does not claim that the record is missing any appeals to the Secretary, with the exception of a letter sent to Casaus that was rejected for failing to follow policy. Thus, these allegedly omitted grievances still would have been procedurally barred since he does not claim to have properly appealed any of them.

As for Levin's grievances on the record, it is clear that he failed to exhaust all of his remedies for the grievances involving medical care. In fact, Levin filed this lawsuit before the Grievance Officer notified him that his grievance regarding his medical care was rejected because it contained multiple complaints. (*See* Doc. 1.) Although he claims to have sent a copy of the grievance letter to Casaus concurrent with filing his grievance (Doc. 44 at 4-5), this does not comport with the appeals protocol as defined by the Grievance Policy and does not satisfy the exhaustion requirement. The law is clear that an inmate must fully exhaust all remedies according to the contours of the prison's policy prior to litigating his claims. *See Jernigan*, 304 F.3d at 1032; *Thomas*, 609 F.3d at 1118. Here, Levin did not even wait for the Grievance Officer to respond to his grievance before involving the Court. Since Levin did not fully exhaust his administrative remedies, he is barred from litigating this suit and Sandlin is entitled to summary judgment. Furthermore, dismissals for failure to exhaust are typically without prejudice, *see*

*Patel v. Fleming*, 415 F.3d 1105, 1109 (10th Cir. 2005), so I recommend that the Court dismiss Levin's complaint without prejudice.

   II.   **Levin's Motions for Default Judgment (Doc. 41), Summary Judgment (Doc. 41), a Jury Trial (Doc. 35), and to Remove Counsel (Doc. 35)**

Levin filed a motion for default judgment and for summary judgment (Doc. 41) and a separate motion for a jury trial and to remove Sandlin's counsel (Doc. 35). Both are meritless. His motion for default judgment rests on the incorrect premise that Sandlin failed to file a timely *Martinez* report. (*Id.* at 1-2; *see also* Doc. 34; Doc. 40.) Since Sandlin's *Martinez* report was timely filed, this cannot be a basis for default. Alternatively, Levin argues that he should prevail based on the merits of his Eighth Amendment claims. As previously stated, I need not consider the merits of Levin's claims since he failed to exhaust his administrative remedies at CNMCF. Therefore, I recommend that this motion be denied. Since I recommend that the Court grant summary judgment in favor of Sandlin, I also recommend that his motion for a trial and to remove Sandlin's attorney (Doc. 35) be denied as moot.

## Conclusion

Levin failed to fully exhaust his administrative remedies and is barred from litigating his constitutional claims under § 1983. I recommend that the Court grant summary judgment for Sandlin and dismiss Levin's complaint (Doc. 1) without prejudice. I also recommend that the court deny his motion for default judgment or summary judgment (Doc. 41) and deny as moot his motion for a trial and to remove counsel (Doc. 35).

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

*William P. Lynch*
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.          10